We have three cases to hear this afternoon. We'll see if we hear them all without a break, or if we stop after two, it may need to be seen. You're all familiar with the rules of the road, I'm sure, but do watch your lighting system. Finish the answer to any question you've been asked without worrying about the time. But worry about the time otherwise, and stop when it turns red. I think we have a repeat performer today on this first case. Welcome to both of you. He was here yesterday. Warming up for today. The first case is the United States v. Samuel Morales. Mr. Lynch. Thank you, Your Honor. May it please the Court, Phil Lynch v. Samuel Morales. This case presents two issues. The first is whether the government produced sufficient evidence to prove that Mr. Morales had conspired to distribute heroin. I think I've gotten that every time. You'd think after 30 years I would learn. The second is whether improperly admitted hearsay evidence of an extrinsic offense substantially influenced the jury's verdict in this case. So the evidence was insufficient in this case. To prove a conspiracy, the government had to prove an agreement to violate the drug laws, knowledge of that agreement, and participation in that agreement. The evidence in this case didn't show that Mr. Morales had agreed to a conspiracy. Not surprisingly, there was no direct evidence of a conspiracy. There often isn't, and of course it's not required. But the circumstantial evidence in this case didn't rise to a level that a reasonable jury could conclude that he had agreed to violate the drug laws and specifically conspired to possess or to distribute heroin more than 100 grams. Really, all the evidence showed in this case was that Samuel Morales, who was a long-term drug addict, met a man named George Galindo, who was a drug dealer. And that in Morales' room we found a user amount – the officers found a user amount of heroin and used needles. Galindo, after leaving the motel room where he met with Morales, was found to have a substantial – like 139 grams, I believe – of heroin in a black bag in his car. The government's theory was that Morales must be involved in this because when Galindo went up to the motel room, he wasn't carrying the black bag. And he was carrying the black bag when he came down. But the problem is the government didn't connect anything up. It does – they did show the bag didn't go up with Galindo and it did come down with him. But they didn't show when the heroin got in the bag. They didn't show when Galindo got the bag. There's no evidence. They couldn't say whether Galindo had the heroin. Was there evidence Morales secured the hotel room? Yes. It was rented in his name. And did you get a mere presence instruction? I'm not saying it's always the panacea, but did you request and get it? I believe that that was given yes. I don't even know if it was requested. I think it's in the district court standard. Mere presence is not enough. But that is what this case is about. It's mere presence and association. I think that's all the government showed. They couldn't show that Galindo didn't have it on his body when he went up. They admitted that. So they couldn't show that the heroin was in the bag when he came down. And I think that's even more key. What they could show was that when Galindo was stopped after leaving the motel, he went down the access road a couple blocks, turned, went up a block, turned,  Why is that important? Because the officers admitted, and I think this is at record 381 and maybe record 365 and 66, that they couldn't see what Galindo was doing in the car. So it's entirely possible that Galindo had the heroin on his person or he had left it in the car. Were you a trial counsel? No, I was not. I mean, it's a difficult case partly just because the guy admits he's been a heroin user his entire life, so the jury's got to distinguish that admission from conspiracy to distribute in 2020. Correct. And so to me, that made more salient the second issue. I'm not saying get to it, but a lot depends on how the government did or didn't properly use the fact that he'd been a user and distributor even his entire life. But you can go directly. No, I agree, and I don't want to. I do think the evidence was insufficient. I do think the government didn't connect any of this up. I do think it was a matter of the jury just speculating him into a conviction. I'd like to say maybe one or two more things. The cases in which this court has reversed a conspiracy conviction, a number of them are because of a lack of plan. And I point that lack of evidence of what the conversation was about. And in this case, no one could say what the conversation was about. And I direct the court's attention, invite the court's attention to Barrera, which is 547 Fed Second at relevant pages 1256, and Galvan, 693 Fed Second. The relevance are 419. You cited both those ones. 420. Yeah. I don't think I have Barrera. I found that since then. But the other things I'm taking is, well, I do think absolutely it's insufficient. I think the closeness is a sufficiency issue illustrates the problem with the improper extrinsic defense evidence. And this was clearly improper. This was hearsay. All that Sergeant Sanchez could say was he'd been told. Could you explain to me how you preserve the objection? Because at ROA 431 is when there was the questioning that yielded the discussion of, you know, the information was that he was riding around the street on a bicycle. And then several questions later, the government offers Exhibit 8 into evidence, and that is when the objection is made, not at the time of the discussion of the alleged hearsay. So how on earth does that preserve that error? Before trial. I know that. But before trial, the judge said you're going to have to object at trial. So it's not you, but y'all did not. The judge said I don't see any hearsay. It's going to come in unless something – but I'll keep it open if something changes. He said you have to object at the trial, and you didn't. You all. I understand. Okay. Did not object. And so I just don't even understand how that's preserved. I know the government didn't claim it wasn't preserved, but we have to decide the standard of review. And I'm just – is this plain error or is it regular review? I think it should be regular review because I think the preliminary determination under Rule 103 actually is the judge is telling us it's coming in unless you can show me something different. Well, it's not our story. It's the government's story. They're the one that asked the judge, and we objected to rule that it could come in. The judge said unless I see something different happen, it's coming in. Well, that makes sense because the notice, the 404B notice, said just this officer encountered the defendant. So it looked like it was personal knowledge. So then the judge says, okay, and his exact words were that's the officer saying that, not hearsay. Correct. But then he said let's see how it plays out. Right. Then you object, and what does the judge say? For the reasons I stated earlier. In other words, he's saying somehow this – you objected and it's somehow hearsay. But now we've got the witness clarifying that he didn't see it. He didn't encounter. So that's your argument, right? You objected previously. Then you objected all over again when it became clear it was hearsay, that court hadn't – that's the situation, right? I don't think that's quite the situation. It's true that the notice made it sound as if Sergeant Sanchez had firsthand knowledge. But defense counsel made it quite clear before the trial that it was hearsay, that it was from two informants, and that was the only evidence they had. But it's understandable the judge reading the notice would think it could be personal knowledge. So he says renew it. Well, I can see that – But you did not renew it. I mean, the problem is the testimony about he was driving around, and the information then was that he was riding around the street on a bicycle. He was actually making his rounds and so on. That is several questions. It's a page before the government says, we move to admit government's Exhibit A for identification and evidence, and then he says, yes, we renew our objection we made the other day, and then he says it's overruled on government Exhibit A. Not on the answer about how he found out about it. So how is that answer preserved? Because if somebody has asked a question like, tell me about where you went yesterday. Oh, John Doe told me that he was a criminal. Okay, you wouldn't have objected to the question. There's nothing wrong with the question. But you objected to the answer. Your Honor, I object. That's hearsay. You don't wait a page until an exhibit's offered to object to the hearsay answer. Well, it certainly would have been a better practice to object at the time. I certainly do not disagree with you in any way. I'm not conceding that, counsel. What lawyer wants to object exactly when the worst possible testimony comes in? The question from the government is, what were the circumstances? Nothing about hearsay. The answer then, unprompted, is hearsay. What lawyer, what case do you know of that requires you to object at the moment the jury would immediately look at that? Are you conceding that? I'm not conceding it, Your Honor. I think that – but I do think that my main argument is it was preserved in the before trial because we set out exactly what the problem with it was. And I don't think it's an excuse for the district judge to say I didn't – I don't see hearsay. He said I don't see hearsay. But we told him what the hearsay was. We told him. Does the district judge say overruled because you're too late? Or the district judge say overruled for the reasons I said before, which is to say non-hearsay? Yes. That's how I take the judge's answer is that – but again, I think – But that's on Exhibit 8. I mean the Exhibit 8 was offered. Yes. And the judge said – and then Mr. Wilson said we renew our objection we made the other day, Your Honor. Yes, sir. The objection is overruled for the reasons stated previously. Exhibit 8 is admitted. How is that an objection to the hearsay answer at ROA 431? I think that because he – The alleged hearsay answer. Because the entire matter is tied together at the pretrial hearing that they understand each other. The judge understands what it is that Mr. Wilson is objecting to. Again, could he be clearer? I think he certainly could have been clearer. Now the government's argument here isn't this at all. The government's argument is done again. Yes, which is clearly not done again. I mean done again is – first it wasn't offered for the truth of the matter asserted, which this was. This was because in order for the extrinsic evidence to be admissible, you have to show that the defendant – the offense was – prior to that act was committed and the defendant committed it. And the only evidence they have of that is hearsay. And this court's law is clear. That's Richards and Fidelity Deposit and Beecham. That hearsay has to be dealt with first. And so since it was inadmissible hearsay, we don't even get to the threshold question of 404B because they can't show – they couldn't show that he committed the offense. And so done again – It's hearsay about something that happened in 2009. The jury is told we're looking at a conspiracy in 2020. How would they have confused the two? They're given 404B instructions. He admits he was a heroin user. And the JNC comes in anyway, which is support for the 404B. So I'm – you can see where I'm going. Isn't this harmless even if it is hearsay? It's not confusion. No, it's not confusion. It's the point, the purpose that the use that the jury might make of the evidence and the way the evidence may influence the jury. The jury was told by the district court that on this evidence it could consider it for knowledge. And so it tips the government – tips the jury towards a finding that he did agree, that he did voluntarily agree. Whereas a possession conviction alone is consistent with his defense that he is a heroin addict for a long time and that he was simply purchasing heroin for his own use. And so I don't think the judgment – I think there's a vast difference between this testimony that, oh, he's a distributor and a judgment that says he's a guy who possessed it, which suggests very strongly a user. And when the government is – a jury is instructed, they can consider that. And when the prosecutor comes in in closing argument and says, you know, we know he does this sort of thing. How do we know that? Because of the prior testimony we heard. The prior distribution testimony we heard from Sergeant Sanchez. Would you agree if there's a closing argument error, that subject complaint error, would you not agree with that? I am not making a closing argument error. I am saying that that – right, that it goes to King. If it wasn't needed and effective, the prosecutor wouldn't have reached for it. And a lot of this comes down to – although it's my friend's burden to show that it wasn't substantial and injurious. If I don't make that argument, then I often hear that I should have made. How did it hurt my client? How did it hurt my client? Well, I've tried to tell you how it hurt my client. And I think that given the weakness of the circumstantial evidence, where it could have been, that without this evidence, improperly admitted evidence that he distributed before, the jury could simply say – I'm still having problems. Why would a jury properly instructed, as they were here, think anything to do with the 2009 would go to an agreement in 2020? Because they were told that he had distributed before. And what does the government have to prove? An agreement to distribute. And if the evidence is very close on, whether this is a single sale meeting or some sort of drug agreement, then the fact that he's done it before and that the court told them they can consider that if they find the acts, which I assume are what the government had – look, there was a meeting, there was some sort of discussion – then in considering what might have happened, you can consider the prior. And so that tips the jury towards the conclusion that he is distributing as opposed to simply a long-term addict buying. Because as the prosecutor said, it's what he did in 2011, although it was 2009. It's what he did in 2011, and it's what he did in 2020, and that's at ROA 474. And I think, Your Honor, that were you to conclude that it wasn't properly preserved – and I think it was before trial – that that would still amount to plain error. It's clearly inadmissible here to say. And I think it affects his substantial rights because the evidence in this case is so slim. But you're not appealing the admission of Exhibit A, right? No. Again, at the pretrial – And that was the extrinsic offense. The question was the hearsay aspect that you are now appealing. But that was just the sergeant talking about what he was told, not the Exhibit A, right? Yes. May I answer that question, Your Honor? Yes. Go ahead. Oh, please. Yes. Yes, that's correct, Your Honor. And if you look at 272 to 276, you'll see that we conceded at the pretrial discussion that the exhibit itself, the possession conviction, would be admissible. That's not what was contested. It was – The only time that they all objected was when he offered the exhibit. But we had objected before that when the government said – The objection is at the time of the offer of the exhibit, not back when – and not saying it has to do with the answer or can we approach the bench. That's the answer to Judge Higginson's concern. You approach the bench, Your Honor, may I approach the bench, and then you can make your objection if you don't want the jury to hear your objection. But you never actually made it. Y'all never actually made it. Well, my time is up, so – Good afternoon. May it please the Court. I think the evidence sufficiency is better than he says it is. I'll get to that, but I think your concern first is the admissibility question. I am not arguing Dunnegan. It was hearsay. We were wrong in the brief. It was hearsay. I can't get around that. There's a sense that there's a generation of lawyers that skipped the second year of law school. You're not arguing plain error? I am going to argue plain error. You are going to now or you didn't agree? I am going to now. I think Judge Haynes reads the record the way I understand the record. And I think, Judge Higginson, you also see what I see in it. I think that at the time that the issue of the admissibility was raised prior to jury selection before Judge Counts, Judge Counts didn't know what the evidence was going to be. The defense lawyer did because he had read the reports, and the prosecutor, I think, was conflating two pieces of evidence. One piece of evidence was the information that the officer had that caused him to stop Mr. Morales back in 2009. That was the information. Informants say when he's riding his bicycle, he's distributing heroin. The other piece of evidence is Exhibit 8. That's the conviction that came from that. That's a conviction for possession. And that's when the objection was made. Well, when we get to trial, I mean, at the end of the proceeding or that interlude prior to jury selection, as I read the record it was left, the district court said, well, I don't see the hearsay. Well, the district court didn't see the hearsay because it wasn't explained to the district court at that point. Pre-trial. Pre-trial. I agree. And it was understood. And Mr. Morales's lawyer said – But he did say because the officer saw it. That's right, but he didn't understand – He didn't understand there was more to it than that. True. Because it was altered. But he's now given a reason at pre-trial to not grant the motion to eliminate. He said – There is no motion to eliminate. It was a – Well, they were objecting to the 404B, and he says because that's the officer saying that. It doesn't sound like hearsay because that's the officer saying that. Right. At the time – Misunderstanding. It is misunderstanding. Yes. But that wasn't the end of it because the judge said to the prosecutor, I expect you to approach the bench to raise this before you put the evidence on, which we did not do. And the defendant's lawyer, Mr. Morales's lawyer, said, well, I'll make the objection when it comes in. And so we're sort of at square – we're back to square one. And so there isn't a ruling yes or no at that point. Well, there has been one explanation given. And if I'm not mistaken, when he gets – when he – two questions after the witness blurts out the hearsay, the court gives its reason for denying it. And he says what? For the reasons I said pre-trial. It doesn't say because you forfeited it. But it depends upon what that objection was to during the trial because we're at page 431 of the record where it starts. What were the circumstances under which you encountered Mr. Morales? And the officer, Sanchez, starts in, in 2001 I had received information. Now, the defense lawyer knows what's coming because that's what the discussion before trial was about. This is exactly what this is about. The event in 2009 that led to the arrest of Mr. Morales that resulted in his conviction for possession of a gun. But what's the question that elicits the hearsay? What were the circumstances under which you encountered him? You're saying that. Not in that. I had received information that. Boom, objection. But there isn't one. Can you tell me a Fifth Circuit case – I know you didn't brief it as plain error. Can you tell me – I know you've been around a lot – where we will say a lawyer who doesn't immediately object or ask to go to sidebar when something as radioactive as that comes in. That is a big rule of law for us to have. I'm not asking you to do that. Okay. But what I want to talk about is the rest. I'd just love to hear what you say. What are you asking me to do then? Because what happens is they go through that incident. There's no objection. He's finished. And then the question is, I've handed you what's been marked as Exhibit 8. Now, we're on to Exhibit 8. We're not talking about that anymore. That's all done. We're on Exhibit 8. It's a conviction. Two questions later. No, it's like five questions. No, it's actually more than that. There's a question, did you actually encounter him? What happened when you encountered him? I think I remember pretty clearly. I don't think – it's the same page. I think it's two or three questions. Probably about 30 seconds. Well, I'm sure – then it gets to, did you arrest Mr. Morales? Yes, I did. Was he eventually convicted? Yes, he was. Your Honor, the government moves to admit Exhibit 8 for identification and evidence. And a court looks to the defense lawyer and says, Mr. Wilson? And Mr. Wilson says, yes, we renew our objection made the other day, Your Honor. To what? To the admission of the conviction? Or the admission of the testimony that was sometimes – This is a good point. Opposing counsels had no opportunity to think about this. You didn't brief it. So he's hearing this all for the first time, that this whole case may turn on something that you have now changed the government's position on at the podium. That's fair criticism, Judge. That's fair criticism. I'm just trying to – But we decide our own standards. You all decide the standard of review. It's not something you all can waive. I mean, I – No, I'm not saying anything about waiver. I'm saying – you can hear my emphatic tone how consequential I think this would be. Do you know of a case, any circuits ever issued, that says if you don't object within – in the same sequence of discussion as to something you did object to pretrial, that gone. You can't – now they can use it in closing argument as hearsay. That's what I'm asking you to do. What I'm saying is if you read this, what the district court thought the objection was to was to Exhibit 8. He never objected. Not to the prior – not to the testimony about the circumstances of the 2009 stop. It was to Exhibit 8. And Exhibit 8 is not hearsay. So when the judge says the objections were overruled for the reasons I stated previously, that's not hearsay as to Exhibit 8. Because at that point, that is the question that's posited to the judge. So then why does the government in closing get to say what the government said in closing? I'm not saying we did. I'm just saying – No, but you did. The lawyer said, and you heard. What did the lawyer say? The government prosecutor said, you know, we know he's a distributor because he was so in 2009. Yes, he used it for the hearsay purpose. What I'm arguing about is the standard of review. And that was never objected to. And that wasn't objected to either. And all I'm saying is the standard of review. The question is who's got the burden of proving the prejudice? Does he have the burden of proving the prejudice? Well, you're making a very coherent argument, and, of course, I'm just one of three. But opposing counsels never thought he had to respond to any of this. We have no case law to support the position. If I remember, the brief said it's done again. This is background. This isn't hearsay. I understand, Judge. Okay, well, that's – for such a consequential issue, that's a difficult predicament. We'll hear if he can answer when he gets up on rebuttal. And that's – and all I'm doing is – You have plenty of case law that says you do have to object. And the problem is I don't see how this is an objection to what was the alleged hearsay up there in 431 when at 433 you're objecting to the admission of the Exhibit A. That's what the record is. You know, a prior conviction. So I guess I don't understand how that objection was ever made. Even if it doesn't have to be made at the exact moment, it does need to be made in a timely fashion. I agree with you. Well, I guess the other thing I'm wondering is why he didn't ask for some advisory statement, like you are not to consider this as truthful conduct but just the information that he was relying on. So in other words, like maybe it's raining outside, maybe it's not, but I was told to take an umbrella. That doesn't prove it was raining, but it's why I walked out with an umbrella. So you could ask for that kind of limiting statement to the jury that was also not askable. He could have, but I mean assuming that it is – that it was hearsay, what I think that the prosecutor's statement in closing demonstrates is that we used it for the non-hearsay purpose. We did do that. But the question is did that affect the jury's determination? That's what the ultimate question is, and I'm arguing about what I think the record shows as to what – but on the discussion, then what is your best argument that it's still okay? Well, if it was preserved, then we have to show, as I understand the Kodiakus standard, essentially that – where am I looking here? Does the record show that the judgment was not substantially swayed by the error? That's what we have to – did it – beyond a reasonable doubt, did it not affect the jury's determination? And I think that's where the sufficiency of evidence sort of comes into this, and Judge Higginson, you alluded to some of this stuff, because the evidence was he was a 50-year heroin addict. His lawyer brought that up twice, and I wouldn't be surprised if that wasn't a more remarkable impact on the jury's verdict than this comment by the prosecutor in this piece of evidence of what happened years ago. I think that's part of the response to that. You say that, but isn't it fair, Mr. Durbin, to say that the only evidence to support he was distributing at the time of this offense was that hearsay statement, the only additional evidence that would bolster that? That was evidence that 10 years before he had distributed, but the evidence that was before the jury for this particular offense in 2020 or 21 was that he had this motel room. Okay, I understand that. My only question, and I think you said yes to it, but I want to make sure you understood the question. The only evidence to bolster your interpretation of what was going on in the events that were the subject of this prosecution was the hearsay statement that he was a distributor in 2009. The only evidence to bolster it? The only evidence outside of this particular event to show that he was in the habit of distributing heroin was from that 2009 hearsay. I'm not aware of other evidence that even addressed that. So any doubt in the jurors' minds about that, the one thing they could latch onto would be this hearsay. And the question is, I think, does this record show, though, that there's beyond reasonable doubt that the jury didn't do that? And I think there's a couple of things that point in that direction. I don't know if it gets us there, but I think it points us in that direction. One is the conviction did come in, and it was non-hearsay. And so the conviction of the prior came in. That's one of them. The other is he was a 50-year addict, and the circumstances of this case were it was a reasonable interpretation for the jury that he was sitting on this stash because he was getting what he needed. And because the wrappers— Well, and, I mean, when he was doing that bicycling in 2009, it was more to it than just the alleged hearsay. It was he pulled him over, and they checked him out, and, yes, he had heroin with him on that bicycle. He did, and it's— And that is relevant to how this officer kind of recognized him because he'd encountered him before on this bicycle ride in 2009. So that's why that's like a full story. It's not just the one sentence. It's a full story. Well, and it's also—it was a different scheme. As Judge Higginson, I think where you were going in part was, was there jury confusion? I don't think so because he was the distributor of usable quantities back in 2009, if you take that testimony to be accurate. But what he was doing here, well, he's a 73-year-old heroin addict who's sitting in a motel room. He's got multiple rooms. There are multiple receipts in there. There's evidence in the record. There's testimony that what they do with this kind of stuff is they use motel rooms to sit on it because they don't see it as obvious, they're not going to get caught, and they can move from room to room. And that's what the evidence supported in this particular case. His role was different. There was a limiting instruction on the 404B use of it, that you can't use it to find that he did it on this occasion, but that it's relevant to motive. And his motive is—what our point was is his motive here was he was providing a service, and this is why I think it's a conspiracy. He was providing service to Galindo and the others in the conspiracy to sit on that stuff and provide it to him when he came to get it. Did Exhibit 8 contradict the hearsay statement that he's a distributor? Since you're emphasizing Exhibit 8 comes in, does the J&C say not a distributor? See my point? It says— What did he get convicted of? Possession. Okay, so that actually contradicts the hearsay. If the jury actually were going down this road— Yes, it does, yes. So, I mean, this is a soft question. Yeah, no, I mean it could. But I think it also— Possession doesn't mean you weren't a distributor. It just means that's what they think they can prove. Correct. Plus it's also prior that the jury heard about his involvement. Oh, I know. That's what I'm asking. To me it's a harmlessness issue. I think that's right, and I think that that contributes to the harmlessness. That's what—I'm not saying it very well, but that's what I'm trying to say, is all of these circumstances, apart from the reference 2009-2011, there's substantial evidence of what he's doing, and I don't think it influenced the jury. As I say, the prior conduct was different, and the court gave the limiting instruction. I think under those circumstances, that's enough to find that it didn't influence the jury. I wish it was stronger, but that's what the record is. As far as the substantiality of or the sufficiency of the evidence, in addition to the motel room, multiple rooms, information about drug dealing, and this was a scheme for the drug dealing, there was evidence of that. There was knowledge that Galindo—the officers had knowledge that he was a distributor, that he was using the motel room scheme for his distribution. He was distributing in motel rooms in a truck stop. And there was the circumstance that Galindo was stopped just several blocks away after coming out of that motel room. I think the jury could reasonably find he didn't have time to take the heroin from some other place and put it into that bag. He went up without a camera bag. He came down with a camera bag. All of those circumstances. And the other thing I'd leave you with is Mr. Morales exhibited guilty knowledge because he was asked at the time that the police went to the room, you know, Mr. Galindo? Yes, I know Mr. Galindo. What was he doing here? Oh, he was just coming to give me a ride to the store. Well, they knew that wasn't true. So he exhibited guilty knowledge, and that was pointed out to the jury. And I think there are reasonable inferences from this, and the reasonable inferences are that Galindo got the heroin there from Morales. That's what he went for. Because remember, Galindo had a medicine bottle with heroin in gram quantities that were packaged the same way, in tin foil, as the gram that was found in Mr. Morales' room. And the inference drawn from that is that was the payment to Mr. Morales for what he was doing with the motel room and providing the heroin or sitting on the heroin. Morales, I think you can infer he was possessing the heroin when Mr. Galindo got there. The jury could infer from the similar packaging that he got it from him. He had guilty knowledge, and this was not a buyer-seller relationship, that he was actually performing a service, and he was getting paid in kind for the service to further and participate in the conspiracy. So I think that there is sufficient evidence to sustain the conviction. If the evidentiary issue, if we don't meet the burden, he would not be acquitted. He would be reversed for retrial. But I think there is sufficient here for the court to find that it didn't have an effect on the jury's outcome. If there are no other questions, I'll sit down. Thank you very much. Thank you for your indulgence. I think this goes both to sufficiency and to the harm. My friend says they, they, they. And that's the problem is the government had a lot of evidence of unrelated acts, and they said, well, connect it because they. But those motel receipts, those were Mr. Morales' name, and the officer admitted they had no evidence that Morales and Galindo had met before. So you're speculating that those other motel receipts have anything to do with Galindo. And that's the problem with the case. Whether you think the evidence is sufficient in the end, it certainly is the problem with the harm. And it's very much the harm if we're in the cardiac arrest test. I would again suggest that this was explained to the district court. But that's pretrial. You don't think this objection to Exhibit 8 is an objection to the witness's answer a page before, do you? I don't think we can take it and just dice it into little pieces. Because when I said better practice, and Judge Jacobson said, what I mean, I can't snap my fingers, is my old boss would want you up snapping your fingers. And so I tend to think of it's best to do it quick. But the same objection as the other day to Government 8, if you put it in the context of the discussion and the court's rulings, these people know what they're talking about. I've been a district judge, not in criminal cases, but for eight years. And the idea that objecting to an exhibit is the same thing as objecting to some answer, you know, several questions before, is a little shocking to me. Because you need to know as a judge what they're objecting to so you can rule on that. And the Exhibit 8 is what he was objecting to. So the notion that he should have then implied that he's also objected to everything else under the sun that might come up is news to me. What's your best case on that? Well, I don't have a case on the exhibit exactly. But, again, I really think you have to look at the context. I think the district court, it was explained to the district court, and the district court said, I don't see the hearsay. But he said the objection is overruled for the reasons stated previously. Government's Exhibit 8 is admitted over objection. So he's ruling on the objection to the exhibit, not a lick of statement about hearsay. So how on earth that is, an objection to the alleged hearsay, and a ruling on it, is beyond my understanding. That's all I can say. I think if you look at the pretrial discussion, you will see that the way they discuss the judgment of conviction, which is number eight, and what the government is actually trying to do. And when the district court asked, after the defense attorney explained that this was hearsay, the district court asked the prosecutor point blank, and the prosecutor avoided the question. Okay, but Exhibit 8 is not hearsay. The hearsay, the alleged hearsay, is the answer about why I went to see the bicycle. Yes, yes, I agree. Well, I think we've been over and over that. When you say you don't have a case, it's because you didn't walk up to the podium expecting anyone to say plain error. Is that correct? No, they did not say plain error. And so, I mean, I would say if the court decides, and it is the court's prerogative that it is plain error, that because of the closeness of this case and the obviousness of the error, this is an incredibly obvious error, that this is not only plain error, but it's plain error that affected substantial rights for the reasons I've given because of how it affects the jury's verdict. And it does affect the fairness and impartiality of the trial. This was a closed case. This was a climate case, a reek-of-something-file case that they did not connect up, they left it to the jury to conjecture. And because of that— If we end up agreeing with you, we're disagreeing with you on the sufficiency, but agreeing with you on this hearsay situation, then would you agree with your opponent that that's a new trial and not reverse and render? May I answer, Your Honor? You may answer any questions that come your way. Yes.  Yes, it would be a new trial, Your Honor. It would not be an acquittal because you would have found the evidence sufficient. All right. Thanks to you both.